BEFORE THE SECOND DIVISION, OCTOBER 8, 1959

No. 63421.—Frank P. Dow Co., Inc., and Viking Importers-Exporters et al. *v.* United States, protests 58/16051, etc. (Los Angeles).

RAO, Judge: Certain imported merchandise, invoiced as "Transparent Motor," some in the form of made-up models, some in the form of so-called construction sets, were classified by the collector of customs at the port of Los Angeles as articles composed wholly or in chief value of base metal, within the purview of paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and, accordingly, was assessed with duty at the rate of 22½ per centum ad valorem.

It is claimed in this action that said motors are properly provided for in paragraph 353 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as articles having as an essential feature an electrical element or device, on which duty at the rate of 13¾ per centum ad valorem is assessable.

The competing provisions hereinafter cited read, respectively as follows:

[PAR. 397, as modified by T.D. 51802]: Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*     \*     \*     \*     \*     \*     \*

Other (except slide fasteners and parts thereof)\_\_\_\_ 22½% ad val.

[PAR. 353, as modified by T.D. 52739]: Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\*     \*     \*     \*     \*     \*     \*

Other (except the following: blowers; combination candy cutting and wrapping machines; cooking stoves and ranges; cordage machines; fans; flashlights; industrial cigarette making machines; internal-combustion engines of the non-carburetor type; machines for determining the strength of materials or articles in tension, compression, torsion, or shear; machines for packaging pipe tobacco; machines for wrapping candy; machines for wrapping cigarette packages; tobacco cutting machines; and washing machines)_____ 13¾% ad val.

Two samples of the imported merchandise are in evidence in this case. Plaintiffs' exhibit 1 represents the transparent motor in the made-up state. Plaintiffs' exhibit 2 is representative of the construction sets.

It is shown by the testimony of plaintiffs' witness Byrens that the construction set or motor kit is designed to be assembled into the model form, and again disassembled, by persons learning the mechanism of an automobile motor. The kits, and also the assembled models, are sold to schools which have driving instruction classes to demonstrate the elements by which the motor functions. It reveals the operation of the valves, pistons, and spark plugs, as well as the process of combustion. When the model is assembled, it is a true replica of a Model A Ford engine.

In the opinion of the witness, the model motor contains an electrical element, without which it would not function for the intended purpose of displaying the various features of an automobile motor. The electrical element was stated to consist of a battery for the ignition, a ground wire, wires connected to light bulbs which simulate spark plugs, and a distributor. No gasoline is used to ignite the motor, and there is no real spark. A handcrank is employed to turn the motor and illuminate the light bulb spark plugs, thus showing the true position of the valves and pistons in the engine. The witness further stated that the models could not demonstrate the process of combustion without the electrical element, nor had she ever sold any without that feature.

The testimony of this witness, who was shown to have given many demonstrations of the construction sets and completed models, has not been controverted. To a great extent, it is substantiated by the physical exhibits, which are in evidence in this case. Obviously, if the instant merchandise, when assembled, constitutes a true replica of an automobile motor, designed to illustrate all of its essential components, it would have to show the electrical system which causes the light bulb spark plugs to flash. Without that system, simple though it may be, the made-up motor would not serve the purpose of teaching students the complete process by which it functions.

In the recent case of *United States* v. *S. P. Skinner Co., Inc.*, 46 C.C.P.A. (Customs) 105, C.A.D. 708, involving imitation log fires, our appellate court expressed

the view that the portion of paragraph 353, as modified, *supra*, which is here under consideration, ought to be liberally construed, stating:

\* \* \* Obviously, there are wide differences in size, value, use, and method of operation between locomotives, portable tools, refrigerators, and signs, all of which are named in the paragraph, and it seems evident that Congress intended to include a wide range of articles, of which those named were merely exemplary. In our opinion it would defeat the purpose of the paragraph to include in it only such articles as had a close correspondence to some particular one of the wide variety listed.

The court further stated that the proper rule to be applied in determining whether an article possessed an essential electrical feature, within the contemplation of said paragraph 353, was that pronounced in the case of *United States* v. *Dryden Rubber Co.*, 22 C.C.P.A. (Customs) 51, T.D. 47050, from which we quote the following:

An examination of the language of the third division of this paragraph discloses that the articles therein *eo nomine* specified are of various types; they have, however, one characteristic in common, an essential electrical feature. A fan, a washing machine, and a sign seem to have little resemblance, but their analogy rests in the fact that electricity is the essential feature which causes them to function and perform their work. The language evidently was intended to be read, "articles \* \* \* such as electric motors, fans", etc., thus giving these named articles as examples of such as are intended to be covered by the paragraph.

Many of the articles named in said language are such as might well function with the aid of other than electrical power, if it were not for the fact that, by being named therein, they must be considered as electrical in their nature; that is, a fan, to be included within the language, must be an electrical fan, a heater must be an electrical heater, a washing machine must be an electrical washing machine, a portable tool must be an electrical portable tool, and so on.

There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph is under consideration: First, is it essentially an electrical article? The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all. Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph?

Since the instant models would not fulfill their intended purpose of illustrating an automobile motor, unless all of its functioning parts, including the electrical element were represented, we hold that they are articles with an essential electrical feature within the contemplation of said paragraph 353, which are dutiable at the rate of 13¾ per centum ad valorem. The claim in the protests to that effect is sustained.

Judgment will be entered accordingly.